UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN MCCALL and JAMES RAM, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:10CV269 JAR |
| ) | |
| MONROE MUFFLER BRAKE, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment as to Plaintiffs McCall and Ram (ECF No. 78), Plaintiffs' Motion for Class Certification (ECF No. 82), Defendants' Motion for Reconsideration and Supporting Memorandum (ECF No. 112), and Plaintiffs' Motion for Summary Judgment (ECF No. 119). These matters are fully briefed and ready for disposition.

**BACKGROUND**

Plaintiffs John McCall and James Ram bring this action on behalf of a proposed class of persons that were charged a "Shop Supplies Fee" by AutoTire.[1] (Plaintiff's [sic] Third Amended Class Action Complaint ("Complaint" or "Compl."), ECF No. 54, ¶12). The Shop Supplies Fee is a predetermined percentage of the repair bill that AutoTire requires its customers to pay in addition to the repair bill. In the Complaint, Plaintiffs alleges claims for Damages for Violation of Section 407.010, et seq., R.S.Mo. (Count I) and Money Had and Received (Count II). Plaintiffs allege that it is "unlawful under Missouri law for Defendants to collect their 'Shop Supplies Fee' from its

---

[1]On May 26, 2009, Am-Pac Tire Dist. Inc. sold various assets to Monroe Muffler Brake, Inc. dealing with AutoTire Car Care Center Centers ("AutoTire") in Missouri. (Compl., ¶5). Because the owner of AutoTire is not dispositive of the issue at hand, the Court does not discuss the ownership interests.

Customers." (Compl., ¶27).  Plaintiffs claim that "Defendants are legally obligated to refund to the Customers ... all 'Shop Supplies Fees' charged and collected by Defendants on transactions within the State of Missouri, and to pay the attorneys' fees incurred by Customers herein, pre-judgment and post-judgment interest, costs, and punitive damages."   (Compl., ¶28).

Because the Court finds that the Shop Supplies Fee is not illegal and the disclosures properly disclosed these fees, the Court grants summary judgment in favor of Defendants.

**PROCEDURAL BACKGROUND**

As this case was proceeding with a Third Amended Complaint, on March 2, 2012, Defendants filed their Motion for Summary Judgment. (ECF No. 78).  Also on that date, Plaintiffs filed their Motion for Class Certification.  (ECF No. 82).  In the Motion for Class Certification, Plaintiffs presented a different theory of the case than was presented in their Third Amended Complaint.  The Third Amended Complaint asserted that the Shop Supply Fee was deceptive because the use of the terms "not to exceed 10%" and "may include" wrongly implied that the fee was tailored to the supplies used on the customer's particular vehicle.  (ECF No. 54, ¶¶54, 61, 62, 63, 64, 65, 66).  However, in Plaintiffs' Motion for Class Certification, they present a new, unpled theory based upon a misrepresentation theory.  Plaintiffs assert that despite Defendants' use of the phrase "Shop Supply Fee" on customer invoices and despite other narrow written definitions of the fee presented to customers, they used the fee for intangibles that were not used on the customer's car. (ECF No. 83, pp. 4, 7-8).[2]

On May 7, 2012, Plaintiffs filed a Motion to Present Motion for Class Certification by Oral Argument, and to Designate Order of Resolution of Pending Motions.  (ECF No. 109).  Plaintiffs'

---

[2]Plaintiffs take issue with the fact that the amount of the "Shop Supply Fee" was not related to the cost of shop supplies and could include various intangibles, including "intellectual property." (Id.).

- 2 -

Motion asked the Court to rule on the Motion for Class Certification prior to ruling on Defendants' Motion for Summary Judgment so that any order by the Court would be clear regarding the person(s) or class to whom it applied.  On May 8, 2012, the Court granted that Motion. (ECF No. 111).  On May 14, 2012, Defendants filed a Motion for Reconsideration of this Court's May 8, 2012 Order.  (ECF No. 112).  Defendants argued that the Court should decide the summary judgment issue first in the interest of judicial economy; Defendants contend that the Court should not certify a class that fails to present a viable claim.  On May 24, 2012, Plaintiffs filed their Motion for Summary Judgment.  (ECF No. 119).

The Court finds that ruling on Defendants' Motion for Summary Judgment first is appropriate because of the procedural posture of this case and because it is dispositive of the issues at hand.  Plaintiffs' Motion for Class Certification raises issues that were not previously pled in their Third Amended Complaint and which the Court believes fail to state a claim. The Court finds that it is appropriate to defer ruling on granting class certification, particularly where the class's claim is untenable.  See Thompson v. County of Medina, Oh., 29 F.3d 238, 241 (6th Cir. 1994);  Wright v. Schock, 742 F.2d 541, 544 (9th Cir.1984)("It is reasonable to consider a Rule 56 motion first [(before ruling on a motion for class certification)] when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation.").  Accordingly, the Court grants Defendants' Motion for Reconsideration and decides Defendants' Motion for Summary Judgment first because it is dispositive of this case.

**SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City

of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The substantive law determines which facts are critical and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  Id.  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  The nonmoving party may not rest upon mere allegations or denials of its pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331.  The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"  Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

**A.    MMPA Claim**

Plaintiffs bring Count I under the Missouri Merchandising Practices Act ("MMPA"), which prohibits false, fraudulent or deceptive merchandising practices.  Huch v. Charter Communications, Inc., 290 S.W.3d 721, 724 (Mo. 2009)(citing Section 407.020).  The MMPA makes it unlawful to use any deception, fraud, false pretense, false promise, misrepresentation, unfair practice,

- 4 -

concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise. Morris v. Novastar Mortg., Inc., 05-00791-CV-W-SOW, 2006 WL 2707349, at *7 (W.D. Mo. Sept. 19, 2006).

In their Motion for Class Certification, Plaintiffs contend that the Shop Supplies Fee is illegal because the fees were spent on costs that were not included in the four "narrow" shop fee disclosures. (ECF No. 83, pp. 5, 7-8). That is, Plaintiffs assert that Auto Tire included more items, namely profit, for Shop Supplies Fees than it advertised or disclosed.

The Court finds that the disclosures are not misleading as a matter of law. The alleged predicate for such misrepresentations are four of the five written fee descriptions used by Auto Tire. (ECF No. 100, pp. 2, 3, 4, 7). In their opposition to Plaintiffs' Motion to Certify the Class, Defendants analyze the various disclosures. The earliest disclosures, from the "Company Operations Manual," dated June 2003, required counter signs that explained in clear terms that AutoTire calculates the shop fee on a percentage basis, rather than on a vehicle specific cost basis. (ECF No. 98, p. 8). The sign stated, in pertinent part:

> Dear Customer:
>
> We are sure you are aware of the ever-increasing costs of doing business. One of these costs is the many miscellaneous materials needed to repair your car, which cannot be charged directly to your work order, because the cost of the unit package is greater than the amount used. For this reason, these materials are billed directly to you as a percent of the parts and labor charge, as this is the most equitable way of charging for these materials. Included in the list of materials used in the course of repairs to your car, may be the following [list of 44 sample items]

(ECF No. 98, p. 9).

In addition to the counter signs, another principal way that AutoTire disclosed shop supply charges was through "quotes" and "work orders". These form documents looked the same as invoices, except they were printed and presented to customers prior to service to allow them to

comparison shop with competitors.  (ECF No. 98, p. 9).  If the service triggered a shop supply charge, the charge was shown on the "quote" or "work order" as a separate line item, just as it would later appear on the invoice after the service was performed.  (Id., pp. 9-10).

AutoTire's disclosure procedures changed after Monro acquired the stores.  Some stores continue to use the counter sign as an additional disclosure, but the current mandatory in-store posting is a wall sign that states in pertinent part:

> Surcharge
>
> A 9.99% fee will be applied for service work, not on tires, and will not exceed $39.  The fee covers small quantities of miscellaneous shop supplies, including: brake cleaner, nuts, bolts, sealant, rags, WD-40, silicone and interior floor and seat covers.  This surcharge also includes proper disposal of asbestos and batteries.

(ECF No. 98, p. 15).

AutoTire also disclosed and continues to disclose the shop supply fee on its printed advertising as well as on its website, www.autotire.com.  (ECF No. 98, pp. 10-11).  For example, Plaintiff Ram redeemed two coupons from AutoTire's website which states:

> A 9.99% charge will be added to the retail list price of all service work, not on tires, not to exceed $39 and represents costs and profits (does not apply in NY).

(ECF No. 98, p. 11).

Furthermore, AutoTire discloses the shop supply fee to customers who drop off their car the night before.  The drop-box envelope for keys include the following disclosure:

> A TOKEN CHARGE EQUIVALENT TO UP TO 10% OF LABOR CHARGE IS INCLUDED FOR MATERIALS USED ON YOUR VEHICLE.  APPLICABLE SUPPLY ITEMS MAY INCLUDE NON-SPECIFIC NUTS & BOLTS, WASHERS, PINS, AEROSOL, SOLVENTS, RAGS, TOWELS AND BATTERY CLEANER.

(ECF No. 98, p. 11).

AutoTire also continues to disclose the fee to customers through it policy of providing free written estimates, which is similar to its policy involving "quotes" and "work orders" discussed previously.  (ECF No. 98, p. 11).  On the backside of each estimate is a written shop supply fee disclosure, which states as follows:

> A charge not to exceed 10% of parts and labor may be included for materials used on your vehicle like supply items, nuts, bolts, washers, pins, aerosol sprays, solvents, rags, towels, battery cleaners, etc.

(ECF No. 98, p. 11).

Finally, Plaintiffs contend that the shop supply fee impermissibly constitutes mostly profit for AutoTire.[3]  AutoTire comes forward with a study by its CFO for fiscal year 2011 that detailed that AutoTire's shop supply costs for that year exceeded its shop supply fee revenue.  Plaintiffs have been unable to rebut this study or provide any evidence to support their claim that AutoTire profits from the shop supply fee.  (ECF No. 98, p. 17).

The Court finds that these disclosures properly and adequately notify consumers regarding the charges that constitute the Shop Supply Fee.  As noted by Defendants, the disclosures include: (1) the fee's existence prior to purchase, (2) that the fee is calculated on a fixed percentage basis, (3) the percentage used, (4) that AutoTire charges the fee rather than the government, (5) that the fee is unconditional for non-tire services, and (6) the fee's amount.

Plaintiffs do not identify any fraud or misrepresentation regarding the Shop Supply Fee, even under their unpled theory, other than their claim that the fee provided a profit for AutoTire.  The

---

[3]Nor does the Court believe that Defendants would face any liability for charging a fee that is based on profit.  See In re Mexico Money Transfer Litig. (W. Union & Valuta), 164 F. Supp. 2d 1002, 1015 (N.D. Ill. 2000)("Absent a legal requirement that information be disclosed, there is ordinarily no claim for fraud based on non-disclosure of the information.").  Defendants state that no Missouri court has held that a business cannot make a profit from a disclosed fee.  See ECF No. 108, p. 13; ECF No. 18, pp. 6-7; ECF No. 23, p. 8).  Plaintiffs have provided no case in support of this proposition.

- 7 -

Court rejects this argument for two reasons. First, the Court finds that the disclosures do not limit what AutoTire may discern constitutes a shop supply cost. Therefore, there can be no violation for including other items, such as profit, as a shop supply cost. In addition, Defendants have demonstrated, as a matter of law, that the they did not profit from the shop supply fee. Defendants provided a 2011 study by Monroe's CFO that shows that Monroe lost money on shop supplies. As stated, this study has not been rebutted by Plaintiffs, nor have Plaintiffs provided any evidence to support their claim that Defendants profited from the shop supply fee.

Accordingly, the Court finds no basis for an MMPA claim and grants summary judgment on that claim as a matter of law.

**B.     Money Had and Received**

"An action for money had and received is a very broad and flexible action, which seeks to reach monies which in equity and good conscience ought not to be retained by the defendant but ought to be paid to plaintiff. It is a legal action, but based upon equitable principles." Alarcon v. Dickerson, 719 S.W.2d 458, 461 (Mo. Ct. App. 1986); Bueneman v. Zykan, 181 S.W.3d 105, 113 (Mo. Ct. App. 2005). A claim for money had and received is "appropriate to recover money damages for breach or abuse of a trust, where the plaintiff does not seek to impress as trust upon and to recover specific property." Alarcon, 719 S.W.2d at 461 (citations omitted).

Based upon the prior discussion, the Court finds that Plaintiffs' claim for money had and received fails as a matter of law. This is not an instance where Defendants received money from plaintiff "'under circumstances that in equity and good conscience call for him to pay it to plaintiff.'" Perez v. Boatmen's Nat. Bank of St. Louis, 788 S.W.2d 296, 299 (Mo. Ct. App. 1990) (quoting Ryan v. Tinker, 744 S.W.2d 502, 504 (Mo. Ct. App.1988)). Rather, the Court finds that the fees charged to Plaintiffs were fully disclosed and properly approved by the customer. The Court also notes that several other AutoTire competitors charge similar fees. See, e.g., ECF No. 108

(noting that Plaintiff Ram paid shop supply fees to AutoTire's competitors, Stephen Vincel Honda, Midas/Hampton and Midas/Ballwin).

Thus, the Court finds nothing inequitable in the Defendants retaining the shop fees they charged Plaintiffs. Plaintiffs received a benefit from these fees in the shop services and supplies that were utilized. The Court grants summary judgment in favor of Defendants on Count II as well.

**C.      Claims Fail With Respect to Named Plaintiffs**

As an additional basis, the Court finds that the asserted claims fail with respect to the named Plaintiffs because they did not review the disclosures that they claim were misleading prior to purchase. As discussed, Plaintiffs' unpled theory asserts that Defendants misrepresented the Shop Supply Fee in their disclosures. However, the undisputed evidence before the Court is that neither plaintiff read the disclosures nor was mislead by AutoTire's misrepresentations. Both Plaintiffs testified that they did not see, read or know about the description of the Shop Supply Fees prior to their purchase. (ECF No. 108, pp. 18-19). Therefore, Plaintiffs could not have been mislead by the disclosures. See Roth v. Equitable Life Assur. Soc. of U.S., 210 S.W.3d 253, 258 (Mo. Ct. App. 2006)("Recovery for fraudulent misrepresentation is not possible if the moving party fails to establish any one of the elements."). Accordingly, there is no proximate cause and Plaintiffs' claims fail as a matter of law. See Mprove v. KLT Telecom, Inc., 135 S.W.3d 481, 490 (Mo. Ct. App. 2004)("In order for a false representation to be actionable, there must exist a causal connection between the misrepresentation and the harm allegedly sustained."); Heberer v. Shell Oil Co., 744 S.W.2d 441, 443 (Mo. 1988)(same).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment as to Plaintiffs McCall and Ram [78] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Reconsideration and Supporting Memorandum [112] is **GRANTED**.

**IT IS FINALLY ORDERED** that Plaintiffs' Motion for Class Certification [82] and Plaintiffs' Motion for Summary Judgment [119] are **DENIED** as moot.

Dated this 27th day of March, 2013.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE